ANNETTE B. MARKOE, Respondent, *v.* TIFFANY & Co., Appellant.

*Bailment — delivery to the husband of the bailor — liability therefor.*

Where a wife deposits goods and takes therefor a receipt, which states that "the receipt must be returned on delivery of the goods;" and the bailee thereafter, without requiring the return of the receipt, delivers the goods to her husband, the wife is entitled to recover the value of the goods at the date of a demand therefor by her, and she is not limited in her recovery to the lowest estimate of the value of the articles as testified to by an expert called by her.

In such a case there exists a presumption that the goods belonged to the wife.

*It seems*, that in such a case it is not error for the court to charge, in an action brought by the wife against the bailee to recover the value of the goods, that the act of the bailee in delivering the goods to the husband constituted a conversion.

*Quære*, whether presents given to a husband and wife, left in the possession of the wife, and by her deposited for safe-keeping, may be properly delivered by the bailee to the husband.

APPEAL by the defendant, Tiffany & Co., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of April, 1897, upon the verdict of a jury, and also from an order entered in said clerk's office on the 6th day of April, 1897, denying the defendant's motion for a new trial made upon the minutes.

*Charles E. Miller*, for the appellant.

*Flamen B. Candler*, for the respondent.

INGRAHAM, J. :

The plaintiff deposited with the defendant for safe-keeping a trunk which contained silverware and other articles of value, for the storage and insurance of which the plaintiff was to pay a premium or charge, the amount of which was fixed at thirty-six dollars per year. The defendant issued to her a receipt acknowledging the receipt of the trunk, contents unknown, left with it for safe-keeping, and to be redelivered on surrender of the receipt. By that receipt the defendant also agreed to insure the plaintiff, her executors, administrators or assigns, to the amount of $3,000 against loss of, or damage to, the said package and contents by fire or burglary, and this receipt contained the following provision : "This receipt must

be returned on delivery of the goods, and all liability under this receipt shall cease on the delivery of such package and contents to the holder hereof." The receipt was delivered to the plaintiff when the trunk was received by the defendant's agent, inclosed in a letter which was signed "Tiffany & Co. McKinley," and which stated that the charge for the caring of the trunk would be thirty-six dollars a year. The receipt was retained by the plaintiff from the date of its delivery, on April 17, 1889. It appeared that the plaintiff, then the wife of William B. Wetmore, subsequently obtained a divorce from him. The plaintiff testified to the contents of this trunk, describing each of the articles therein contained. Some of the articles were purchased by the plaintiff herself, and some of them were wedding presents. As to those articles which the plaintiff herself purchased, she described them and stated the cost; and as to those articles which were presented to her, she particularly described them, and their value was testified to by an expert. There is no evidence tending to contradict the plaintiff's witness as to the value of the goods, or to contradict the description of the goods given by the plaintiff. The plaintiff further testified that in the first week of May, 1889, two or three weeks after they were delivered to the defendant, she presented the receipt and asked for her trunk, which had been delivered to defendant; that she then saw Mr. McKinley, the same agent that had written the letter and signed and transmitted the receipt to her; that, in answer to that demand, McKinley said, "I don't understand this at all; that trunk was delivered on the 27th of April." The witness asked to whom it was delivered, and McKinley said that he regretted that he could not give it to her, and it never has been delivered to her. No other explanation appears to have been offered. The defendant simply refused to deliver it.

On behalf of the defendant there was evidence given tending to show that McKinley delivered this trunk ten days after its receipt to the plaintiff's then husband, without requiring the delivery of the receipt, or making any inquiry about it, except that it was delivered to the person who was supposed to be the then husband of the plaintiff. The trial judge charged the jury that if they found as a matter of fact that the trunk and contents belonged to Mr. Wetmore, the person to whom they were delivered, the delivery thereof to him con-

stituted a perfect defense; that the delivery of property to the real owner always constitutes a defense against the bailor; that many of the articles contained in the trunk " are conceded to have been wedding presents from friends. If the presents were made to the plaintiff, they became her individual property; if, on the other hand, they were made to Mr. and Mrs. Wetmore jointly, they became the property of both, and in such case a delivery to either by Tiffany & Co. would be a delivery to both and constitute a perfect defense as to such articles." The jury were directed, therefore, to examine the list of articles which had been testified to by the plaintiff, and determine which of the articles she had purchased herself and which had been given to her individually as wedding presents, and to ascertain the value of those articles, and to allow the plaintiff only for such articles as they should determine under this instruction belonged to her. This, certainly, was as favorable to the defendant as was justified by the facts. Clearly, all of the articles that belonged absolutely to the plaintiff, either because they were purchased by her or because they had been given to her as wedding presents or under other circumstances, were her separate property for which she would be entitled to recover. Whether or not presents given to the husband and wife jointly, which had been left in the possession of the wife, and by her delivered to a bailee for safe-keeping, could be delivered by said bailee to any other person without the consent of the bailor, is a question which it is not necessary for us to determine, as the jury were specifically instructed that they were to allow for those articles only which it was proved belonged to the plaintiff, as either having been purchased by her or presented to her individually. The court expressly charged, at the request of the defendant, that the plaintiff could not recover the value of any articles given as wedding presents to herself and her husband jointly. The plaintiff, being in possession of this property, and entitled to such possession as a joint owner, would be entitled to maintain that possession; and the property having been delivered to the defendant for safe-keeping, any act of the defendant in delivering the property to another, by which her possession of the property is taken away, would entitle the bailor to maintain an action for a conversion of the property. In such a case possession, coupled with a joint ownership in it, is sufficient to

sustain an action of trover. The rule is stated in the American and English Encyclopædia of Law (Vol. 4, p. 117) as follows: "A person having a special property of goods in his rightful possession can maintain trover against all persons who may wrongfully take the goods from him, even by the command of the general owner;" but, as the jury have found that the property was the individual property of the plaintiff, and as we think that the verdict was sustained by the evidence, it is not necessary to determine that question.

We think, also, that it was not error for the court to charge that the act of the defendant in delivering this property was a conversion by the defendant, and that the plaintiff was entitled to recover the value of the property as of the date of the conversion, May 1, 1889. The answer of the defendant admits the deposit of the goods by the plaintiff with the defendant, to be redelivered to the plaintiff on surrender of the receipt given therefor; and that thereafter, and before the commencement of the action, the plaintiff, at the warehouse of the defendant, duly demanded of the defendant the redelivery to her of the said trunk and its contents, and thereupon produced and offered to surrender the said original receipt, which was then in her possession, and offered to pay to the defendant its premium or charges for the storage and keep of the said trunk and its contents, and that defendant neglected and refused to deliver the said trunk or any of its contents to the said plaintiff; and the plaintiff's testimony fixed the date of that demand, which was not disputed, as the first week in May, 1889.

Assuming that the action was on contract and not for a conversion, the court charged that if the jury found for the plaintiff they might assess the damages, and that the court would add interest thereto from the time of the conversion, as agreed to by counsel. There was no exception to this charge, nor was there any request by the defendant to submit the question of interest to the jury, the only request being that the interest should run only from the time of the commencement of the action in case there was no demand upon the defendant for the property; but the answer admits the demand long before the commencement of the action, and that date was fixed by the plaintiff as of the first week in May. The mere statement by the court to the jury, that there was a conversion of the property as of a certain date, was not error; no recovery was

allowed as based upon a tort rather than on contract. The court correctly instructed the jury as to the measure of damages, assuming that the action was for a breach of contract; and merely characterizing the act of the defendant as a conversion of the property as of a particular date did not change the liability of the defendant or impose upon it any additional burden. Whether the action was upon contract or in tort, the measure of damages was the same; that is, for the value of the property upon the date of the demand and refusal to deliver it to the plaintiff; and as no exception was taken that would raise the question as to the right of the plaintiff to recover interest, except upon the ground that no demand was made, which demand was admitted by the answer, no error appears upon the record that would justify a reversal or reduction of the verdict upon that ground.

Nor do we think that the court erred in refusing to charge that the plaintiff could only recover the lowest estimate of the value of the articles as testified to by the expert witness called for the plaintiff. The difficulty in the way of the plaintiff's proving the value of these articles was great, but that difficulty was caused by the act of the defendant in delivering the articles to a person other than the bailor, and in violation of the express terms of the contract between the plaintiff and defendant, which provided that the goods were to be delivered only upon the production of the receipt. The difficulty of proving the value thus being caused by the wrong act of the defendant, it was not to be relieved from liability because of such difficulty. What the plaintiff was entitled to recover was the fair market value of her property, and that fair value was for the jury to determine from all of the evidence. The claim of the defendant, that several of the articles belonged to the husband and wife jointly, was based upon the use by Mrs. Wetmore of the word "us" in describing the circumstances under which they were given. I think that there is a presumption that the contents of this trunk belonged to the plaintiff. They were in her possession; delivered by her to the defendant. The defendant, the bailee, justifies the delivery of the goods to a third person upon the ground that these articles were owned by such third person. The burden of proof was upon the defendant to show that fact; and at least it was a question for the jury to say whether the

ownership of these articles was proved by the testimony not to have been in the plaintiff. In view of the charge of the court, that the jury were not justified in allowing the plaintiff for the value of the articles that belonged either to the husband personally, or to the husband and wife jointly, the jury must have found that all of the property for which they made an award, which was included in the verdict of $2,000, was the property of the plaintiff, and that the defendant had failed to sustain that burden by the testimony before them.

It seems to me, however, that the verdict was larger than the record justified. The court charged that the plaintiff could not recover more than the value claimed in the bill of particulars. The value claimed in the bill of particulars was $2,905. In that was included a gold service valued at $1,500. Deducting the $1,500 allowed for it in the bill of particulars, the value of the remaining property, as stated in the bill of particulars, is $1,405, and adding to that sum the value of the gold service as fixed by the testimony at $285, made the total amount that the plaintiff was entitled to recover $1,694 instead of $2,000, the verdict found by the jury.

We think, therefore, that the judgment should be reversed and a new trial ordered, unless the plaintiff stipulates to reduce the judgment to the sum of $1,694 and interest thereon from May 7, 1889. Upon the plaintiff's making this stipulation, the judgment as modified thereby is affirmed, without costs of this appeal.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and MCLAUGHLIN, JJ., concurred.

Judgment reversed, new trial ordered, with costs to appellant to abide event, unless plaintiff stipulates to reduce judgment to $1,694 and interest thereon from May 7, 1889, in which case judgment as so modified affirmed, without costs of appeal.